May it please the court. I am Chris Kobach, representing the 36 airmen appellants in this case. I'd like to address two issues at the center of this appeal and then reserve five minutes for rebuttal. Yeah, and before you address the two issues at the center, could you also address the parallel litigation in Ohio? There was a 28-J letter from the government about it, and I didn't see any response from you. The concern is that our court has said we don't allow parallel litigation in different federal courts, and so query what we should do about the fact that, as I understand it, your clients are also in a class action in Ohio on the same issue against the same parties. Right. Should this case be stayed or dismissed in favor of that one, or are your clients somehow going to exit the other one? What is your thought on that? Yeah, I'll address that right now, Judge Calton. So the status of the Ohio case, which is in the Sixth Circuit, was a little bit uncertain because when appellees wrote that letter, they were also challenging the class certification. But just, I believe, last week the Sixth Circuit did affirm the class certification. And so now I think we are at the point where our plaintiffs would need to either opt out of that class and remain in this case or stay in that class. And we've begun the process of asking them. So far, 16 have answered, 16, yes, have answered. Seven have stated they intend to opt out of the class and remain in this case. So this case would continue. Well, there's a question whether you can opt out of a 23B2 class. We were under the impression that we could, but that's certainly something we could address. And I'm not sure whether it would be before the district court when the case goes back to the district court after the disposition of this preliminary injunction matter or not. Well, we'll have to think about that. If you can't opt out of that other class, then we'd have to think about whether this appeal should go forward or whether that case should be the only venue for the litigation. Well, and of course, bear in mind, Your Honor, there's actually multiple cases. There's a case in the Fifth Circuit involving the Navy. There's a case in, coming out of Florida, involving... No, but I mean where your clients are part of some... Correct. Yeah, it would just be the Ohio case. Yes. The district court, as I understand in that case, said something about opting out, but then the Court of Appeals in that recent order that you mentioned said the government may be right that no opt-out is allowed. Well, and it's not totally resolved, I don't think. And I think there might also be an open question as to whether some of our plaintiffs are actually included in the class, because our plaintiffs include Air National Guardsmen as well, some of whom have not yet received an answer. All right. Well, maybe we'll need to hear more from the parties on this, but go ahead. I'll let you talk about the other. Well, to follow up on that, my understanding is there is one person, the Ohio class was, I think, started on September 1st, in terms of when they filed their religious exemption request. And my understanding, and correct me if I'm wrong, is that there is one plaintiff from August that would not be covered by the plain terms of the class. Am I barking up the wrong tree? I mean, we searched the record on this particular question. I believe that is correct, Your Honor. And I do think some of our National Guardsmen might not be covered by the class as well. And then there is the question of whether they can opt out. We have at least seven who have already stated they will opt out, and I can give you those names if you wish. Those are Smithley, Preeby, Freese, Viar, Karpacek, Ponce, and Airman number eight. And there may be others when they make that decision. So, with the Court's leave, I'll go ahead and proceed to the two issues. The first issue concerns the, well, let me back up. This case, of course, as you know, is essentially about the Religious Freedom Restoration Act, which I will refer to as RFRA, as well as a Parallel Free Exercise Clause Challenge. All 36 airmen have asserted a religious accommodation request, and they are challenging the Air Force's policy of blanket denial of every single request brought by an airman who is not already intending to leave the Air Force. The first issue is that the District Court erred in framing the compelling interest question under strict scrutiny when assessing the likelihood of success on the merits. The question is not, as the District Court said, do defendants have a compelling interest preventing COVID-19 from impairing the readiness of the Air Force? Rather, the question is, do defendants have a compelling interest in not making exceptions for the specific plaintiffs before the Court? And the reason you frame it that way comes from two sources. First, RFRA itself, in subsection 1b, says that you have to assess the compelling interest in not imposing the burden or the mandate upon that plaintiff. And it also comes from the Supreme Court in Burwell v. Hottie Lobby at page 726 of that decision. I'm just going to quote one sentence. This requires us to look beyond broadly formulated interests and to scrutinize the asserted harm of granting specific exemptions to particular religious claimants. In other words, to look at the marginal interest in enforcing the religious burden in these cases, end quote. The Fifth Circuit agreed and framed the compelling interest test that way. The District Court below erred and framed it more generally, as does the Air Force, you know, have this broader compelling interest in readiness. The second issue is that if the question is framed properly, then defendants, it is almost impossible for defendants to claim they have a compelling interest in denying the religious exemption to these airmen when they have granted at least 3,781 secular exemptions, both medical exemptions and administrative exemptions. I say at least because that number comes from January and on the Air Force's website, it continually shrinks as people getting administrative exemptions exit the Air Force. And so the number, we use the high-end number from January. And it's for that reason that the Fifth Circuit, as well as almost every District Court, ours being one of the exceptions, has concluded that you cannot pass the compelling interest prong of strict scrutiny when you've granted so many secular exemptions. And yet you say you can make accommodation for these thousands of airmen who have a medical reason or an administrative reason, but you cannot find a way to accommodate these who are asserting a religious exemption. Which part of the analysis does that go under? I know you're arguing that it's compelling interest, but I wonder about that, because I think the allegation here is, or the claim by the government is, it is a compelling interest for military readiness, etc. It isn't the argument you're making really a question of tailoring, which is, look, they're granting all these administrative exemptions. So the point is, is that they're really concerned about military readiness. They're not achieving it very well. I mean, or is it really a compelling interest analysis, or both? I think there's overlap, Your Honor, and I think it probably could be lumped in both. Indeed, the District Court judge was sort of, in a sense, complaining that it does merge these two questions. But I think the Fifth Circuit analyzed it properly. They said it's compelling interest, half of the test, and they also said it goes to over-inclusiveness, or under, yeah, over-inclusiveness, because when you, they have, they've essentially, or correct me, yeah, under, no, over-inclusive is the way the Fifth Circuit framed it. And so they said it was compelling interest. But I think either way, you come to the same conclusion. They cannot justify under strict scrutiny declining for one particular or 36 particular airmen to grant this exemption when they have found a way for thousands of airmen covering every possible job in the Air Force of granting a medical or an administrative exemption. Do you have to look at whether the exemptees are comparably situated, or whether the exemptions are comparable? I think, you know, if this was the case of, you know, just, you know, a few that the Air Force had denied and, you know, a dozen that they were considering in this case, yeah, then you might look at that. But here you have an Air Force policy of blanket denial. They have made clear, and this was conceded in the court below by the appellees, that there have not been, there's not been a single grant to anyone who wasn't already leaving the Air Force. And so it does not appear that they are looking at the specifics. And indeed in the case of Airman Fondren, who was one of the few airmen who got to look at his religious response team, the Air Force convenes... No, what I meant was, do you have to look at whether the exemptions granted are comparable to what? Oh. What the other people are seeking. If they're more limited exemptions, for example, and have less effect on the service, for example, would that be part of the analysis? I'm glad you brought that up, Judge Carlton, because the district court judge focused on that and he fixated on a mistake. He assumed that medical exemptions are different from the religious exemptions we would be seeking. And we made clear in our briefing, as well as in our papers below, that we are seeking only the same exemption granted to medical personnel. Both medical exemptions and religious exemptions under Air Force regulation are temporary, subject to renewal. Whatever the medical exemption recipients have received, that is what we would like to receive as well. If they cannot be deployed, so be it. Then we cannot be deployed. If they cannot do something else, a train at a specific location, then so be it. So we are seeking only the exemptions, only the privilege of exemption that the medical and administrative recipients have gotten. One argument that the religious exemptions are different because they are permanent. That, of course, as I mentioned, is not correct as a matter of regulatory law in the Air Force. They are all temporary. But it is also true that some are permanent and some are temporary in both categories. In medical exemptions, a pregnancy exemption is temporary, but an allergy is permanent until a new vaccine is developed that does not cause the allergic reaction. Similarly with our religious exemptions, some are permanent, but some are temporary. The ones based on objection to vaccines developed using fetal cell lines, that is temporary until a vaccine is developed that is not reliant on such lines and such vaccines are in the works and apparently available in some other countries. So that distinction that the lower court relied on is not appropriate. I see that I have four and a half minutes, and I'll reserve the remainder of my time for rebuttal. Thank you. All right, thank you for your argument. Thank you. All right, Mr. Ross, we'll hear from you. Thank you, Your Honor. Kason Ross for the United States, and sitting with me at council table is Major Mark Nowak from the Air Force. The district court did not abuse its discretion in denying the extraordinary remedy of a preliminary injunction, which would have significantly interfered with the Air Force's ability to make deployment and operational decisions with respect to these 36 service members. The district court's subsequent order dismissing plaintiffs individual claims as both non-justiciable and unright only underscores the propriety of denying that preliminary relief. Now, if I can turn to Judge Colleton's questions with respect to the Doster preliminary injunction, or in the Doster class-wide injunction, rather. I will just answer some procedural questions with respect to what's going on in the Sixth Circuit. Our opening brief is due in that case on Friday. It has been calendared for argument mid-October, and the Sixth Circuit has explained that it has endeavored to make a decision by November. This court, however, has explained in Goff v. Menke that it's not appropriate for individuals to seek particularized relief when they are also members of a class in a separate case. Now, plaintiffs have suggested that they, seven of them apparently, have sought, will seek to opt out of the class, but they've not done so yet. Nor have they indicated to this court any particular desire to do so. What about the folks that are not a member of the class? I mentioned one who actually filed his religious exemption outside of the deadline set in the class. I think he was one month earlier than when the class starts. And then there's Airman Eight, who I recall might be outside the class because I think his religious objection was held to be not sincere earlier on. And my understanding of the Sixth Circuit class is that the Sixth Circuit class only includes those who had the religious belief was sincere. So it appears to me that two people are not in the Ohio class. If that's true, then their case may proceed separately from the other 34 plaintiffs. But this court has squarely held, and has admitted no exception so far as I'm aware, of a party to be able to proceed in two separate fora to get the same relief. I mean, it would be inappropriate. Have you studied whether there are any people who are not in the class? Judge Strasse's example is unfamiliar to me, but if there is someone whose beliefs a chaplain had initially found to be insincere, you would be correct that they would not fall within the class definition in Doster. So you don't have a position right now on whether all of these plaintiffs are in the class? I can't say for sure, Your Honor. But if I believe that they all do fall within the class definition, even the plaintiffs that are in the Air National Guard would also fall within the Doster class. The District Court's class certification order specifically mentions the Air National Guard. But I think we should start with maybe the threshold justiciability and ripeness grounds with which the District Court dismissed plaintiffs' individual claims. So far as I understand, plaintiffs did seek a nationwide and preliminary injunction, but their briefing in this case doesn't challenge the District Court's denial of that relief, and all they're seeking here is a reversal of the preliminary injunction with respect to their individual accommodation claims. But the District Court has now dismissed those claims. This court should thus properly affirm the denial of that relief, and plaintiffs have identified no good reason to reverse on that basis. A long line of decisions from this court stemming from Watson have clearly explained that certain cases involving the military are non-justiciable in civilian court, absent exhausting intra-service remedies. This is one such case. Many of the plaintiffs have not even received an initial denial of their religious exemption requests, and no plaintiff has gone to a military board requesting any particular correction of a record or otherwise that would be reviewable in this court. You know, the overlap question is a serious question. We were gonna have to get to the root of that, but I'm wondering about this point you're making with exhaustion and maybe I'm wrong about this, but I think the only court that's accepted any of those arguments is a D.C. District Court. If I'm incorrect about that, please let me know if there are other other courts that have that have accepted the argument you just made. With respect to this particular vaccination requirement? Yes. I believe a court in California, Short v. Berger, also accepted, which is cited in our brief, accepted a similar argument, and the D.C. District Court at Church v. Biden did as well. But there's no... In our judge? Yes, yes, of course, in the District of Nebraska. Yes, absolutely. But your point is Watson is an Eighth Circuit case. Yes, absolutely. So that was the District Court's... And that's what the District Court relied on in its August 5th order. Yes, Your Honor. Well, Mr. Kovach didn't address exhaustion, so I'm sure he can tell us about his view on rebuttal. Absent additional questions on the threshold grounds. On the merits of the RFRA claims... Well, now would the exhaustion apply to all of the plaintiffs? Yes. Your exhaustion problem? Yes. So there's a slight daylight between exhaustion requirements and whether they have a ripe Article III injury. Exhaustion does apply to all plaintiffs and whether their claims are justiciable. None of the plaintiffs have gone to a military board with a particular grievance, either for being grounded or for not being entitled to particular opportunities in the military. And that decision, the Air Force Board's decision, that is the Air Force Board for correction of military records, which is 10 U.S.C. 1552, provides incredibly broad authority to correct various records. So you think you could go to them, even if you're not subject to a discharge, if you're just placed in IRR status, for example? Yes. And for the plaintiffs who have contended that they've been sidelined or been not given particular training opportunities, they could take those grievances to the board for correction. And apologies, my thought slipped away from me, but just to say that 10 U.S.C. 1552 gives those boards, which are civilian boards, but whose decisions are binding on the military, very broad authority to correct military records. Indeed, in some circumstances, they can create a record so as to essentially make an airman eligible for promotion. So how would this work? You're saying that an airman should file something with the board of, the corrections board, I'll call it? Yes. And then a decision would issue from that board, and if relief were denied, then you say at that point the claim would be ripe? That's correct. This court in Fuller specifically distinguished a decision from the Secretary of the Navy, him or herself, which would not be reviewable in this court, versus a decision from a military board, which would be reviewable. Plaintiff's reply brief suggests that the Air Force Surgeon General is the final authority on adjudicating these religious exemption requests, and that's not quite right. That is the final administrative process, as it were, with respect to determining whether an airman may be given an exemption from the vaccination requirement. But that's not the end of the matter. Rather, for military purposes, it's whether they are subject to discipline or any other adverse action subsequent to refusing to comply with the vaccination requirement. And that's the kind of adverse action that would go to a military board for subsequent review. Were, usually when you see an exhaustion issue, there's, they let the applicants know that there's one more step you can take. Were these, when the letters came out in this particular case, was there any notice to any of the applicants, hey, you can go to this military board and get review? I'm not sure, Your Honor. Just candidly, I'm not sure. All of the Air Force Surgeon General's orders in this particular case are in the record. And I can point the court to the many docket entries attached to record 38, which include a number of declarations from Air Force commanders of each of the plaintiffs. And attached to each of those declarations are the Air Force Surgeon General's order for each of them. So I believe it refers to additional remedies if there is an adverse action taken. That is also something that is well known to service members. That is their ability to go to Air Force boards. So again, turning to the merits of plaintiff's RFRA claims absent additional questions. The Air Force has a compelling interest in ensuring that its service members are optimally ready to deploy anywhere in the world on very short notice. And that informs the vaccination requirement. Oftentimes, service members deploy in austere environments where medical facilities are negligible at best. One of the plaintiffs here is the only chaplain for the Air Force Special Operations Force and is otherwise required to travel to over 200 locations across the world. But if he's not vaccinated, he's not able to complete those duties. Another is a nurse who cares for or oversees a life support and infection control program. Again, as the Supreme Court suggested in Missouri v. Biden, vaccination requirements for health care workers are important to ensure that infectious disease is not spread among those individuals. Let me ask you this, and this gets to the point I think you're making, if I'm understanding you correctly. I'll tell you what exactly bothers me about this case. I think you have a really good argument for the employees you just cited. I think you probably have a good argument for people who stay in barracks with other, you know, in close quarters. I'm not quite sure you have a good argument with the people who are office employees, people who work in civilian type jobs. They're still in the military, but an outbreak where they don't interact with some of the crucial employees you're talking about doesn't make as much sense to me. So it seems to me that none of what I saw in the record considered the nature of the job, how close of contact they would be in. It just sort of, as you note, you know, they just sort of denied the exemptions with the exception of people who are administratively separating. And so it seems to me you have a tailoring problem. That's my real problem with you. You have not tailored it because you haven't looked at the individual circumstances of each individual case. So I think, Your Honor, those hard questions that trouble you the most are actually not presented here because none of the plaintiffs have those kinds of jobs. They operate critical intelligence capabilities or pilot planes or provide critical intelligence for various reconnaissance missions, for example. These are individuals who are required to be able to deploy on as little as 72 hours notice. I'll also point you to Plaintiff Barlow, who's characterized as an enabler or conducts critical maintenance on individual aircraft, which need to be ready to fly. The hard questions that you've noted aren't presented by the plaintiffs in this case. And the narrow tailoring concern that you've suggested is also not a question relevant to the RFRA analysis with each of these individuals because the statute specifically requires that the court on a de novo review individually evaluate whether the government has a compelling interest and there's no less restrictive means to the person for each person that has been denied an exemption from a particular policy. And I'll also point you, I'll just say again, Docket 38 includes a number of declarations from plaintiff's commanders who've explained why exactly each of them need to be vaccinated. There are a number of reasons and specific to each individual and it's worth noting that the district court carefully parsed each of the reasons why these plaintiffs need to be vaccinated. And those factual findings, so far as I understand, would be reviewed for clear error and plaintiffs haven't identified any error that the district court took in that matter. And so the concern that you've raised, Judge Strauss, is not presented here. Okay, that's a fair point. What about the administrative exemptions? Earlier, one of us asked about the similarly situated analysis. And I wonder whether what I just suggested is potentially implicated here in this respect. If you are sort of the reverse of it, if you are allowing folks to get administrative exemptions that look like these particular plaintiffs, doesn't that present a problem of I don't know if it's over or under inclusiveness, but if you're allowing administrative exemptions for these people who are almost identically situated, but not religious exemptions, doesn't that present a problem? I don't think so. It's also worth noting, and I'll try to correct the record on this point, there are not thousands of exemptions granted to service members for medical or administrative reasons. We cited in our brief the Air Force's latest statistics, which were, I believe, at mid-July. There were 53 administrative exemptions granted to active duty and reservist members of the Air Force and 541 temporary medical exemptions granted to those service members. There have been, and at the same time... Are they comparable to the exemptions sought here? Or are you saying they're different because they're temporary medical and the administrative are people who are on the way out? Correct. So the medical exemptions are all temporary, and for most cases are for pregnant service members. And all of the administrative exemptions are for service members who are on terminal leave and who are likely to leave the Air Force in the next five months. How are the medical ones not permanent? If it's an allergy to a vaccine, would the idea be if a new vaccine comes out, we take another look at it, or how does that work administratively? I believe that's how it would work, Your Honor. But in each of these circumstances, the Air Force requires that... Air Force Instruction 10-250 requires that all service members be medically ready to deploy. But having an exemption means you're not deployable. And then DOD Instruction 1332.45 requires that service members who are non-deployable for over 12 months are then subject to review for being retained. So even a service member who has an allergy, as you say, and who would not be able to be vaccinated for COVID-19 would be subject to review for retention at the end of 12 months when he is not... if he is continually undeployable for that period. And there can't be a comparable process for religious exemptions. I mean, I just view that the allergy is being very similar to the religious exemption in the sense that it's really not going to change. I guess there's a theoretical possibility you could not be allergic, but there's also the theoretical possibility that your religious convictions could change over the course of a year as well. That's true, but DOD Instruction 1300.7 presumptively assumes that all religious exemptions are permanent out of respect for service members' sincere beliefs. So it's the government's contention, Your Honor, that all of the plaintiff's injuries are quintessentially reparable, stemming from the Supreme Court's decision in Sampson v. Murray. These are all injuries circling back to the Air Force boards that I was addressing previously, that could be retroactively compensated. And they've not identified any irreparable injury pending the outcome of this litigation. Any injury they've identified with respect to pay or particular positions could be retroactively fixed in those boards. I see my time has expired and absent additional questions. We urge the court to affirm. What about these district courts who seem to say that the crisis of conscience, I think one is how one put it, constitutes irreparable harm. Is that a valid theory? As I understand it, the airmen have not been forced to undergo a vaccination, so they're able to live consistent with their religious beliefs. But what about this argument that I seen some district courts seem to say that having to make that choice is itself an irreparable harm. Do you have a view on that? I do, Your Honor, and not to put words in those courts' mouths, but I believe it's something akin to a coercion theory that the Air Force policy coerces individuals to violate their religious beliefs. As a first point, I don't believe any Eighth Circuit opinion has endorsed that kind of view. Additionally, that completely gut the long-standing view of the Supreme Court that employment-related harms are quintessentially reparable. That would be akin to an employer having any particular policy that an employee contends coerces them into violating their religious conscience, and that would itself serve as an irreparable injury. That's not what the Supreme Court has said, and I don't believe this court has ever endorsed that view. How about Elrod against Burns? In that case, Your Honor, there was an existing First Amendment violation. And of course, we argue here that plaintiffs' First Amendment claims are meritless. Well, I know, but you can't conflate the likelihood of success with irreparable harm. In some way, I think Elrod does do that, and because it predicates... No, I'm saying if you have to assume, well, I'm assuming for analysis that if there is a meritorious likelihood of success, your argument is even so, there's not irreparable harm. That is our argument, Your Honor. Yes. Is that consistent with Elrod? Elrod is in tension with that argument. However, we've relied on, I believe, the Coalition for Economic Equality from the Ninth Circuit, as well as the Ninth Circuit's decision in CULSA, which suggests that even if there is a particular constitutional injury, that wouldn't necessarily amount to irreparable harm. Additionally... We have that Rickenberg case from our court where... Exactly, where this court said no irreparable harm, even though you could be discharged from the military. It's a First Amendment claim. Exactly. All right. Thank you for your argument. Thank you, Your Honor. Mr. Kobach, I'll give Mr. Wells a second here to get the podium ready. Thank you, sir. Thank you, Your Honor. I'd like to quickly address some of the points that were just made. Regarding the airmen outside of the class, I believe there are three. It would be Airman 8, which Judge Strauss already mentioned. Cassidy also had no ruling on sincerity by the officials in his religious review team, and then there was the one who appealed prior to the Sixth Circuit class beginning. So I think there are three outside of the class. Another issue that was mentioned was asked by Judge Strauss, is there anything in the letter that the airman receives when his appeal is denied, saying, and you may appeal now to the Board of Correctional Military Records? No. And every single Air Force regulation... Isn't that well known, though? I mean, I don't know if there was any letter in the Watson case that said you may go to the Board of Correctional Military Records, but that's well settled Eighth Circuit law. Actually, you better address Watson. That's where I'm going right now, Your Honor. Watson, I think, has been misconstrued by the council opposite. Watson v. Arkansas National Guard, 1989 pre-RIFR, by the way, rejected the Fifth Circuit's Mendes test, but Watson stated, and this is found on page two of our reply brief, extended quote, there's a vast difference between judicial review of the constitutionality of a regulation or statute of general applicability and judicial review of discrete military personnel decision. In the first instance, a legal analysis is required. This is in that first category. Clearly, we're analyzing the statutory viability and the constitutionality of this blanket policy of rejecting all religious exemptions. Secondly, Watson predated RIFRA, and the Fifth Circuit abandoned the Fifth Circuit's Mendes test recently. It just as the Eighth Circuit, in this case, would have to say that at post-RIFRA, it's different. Why would that be different? Because RIFRA operates, in the words of the Fifth Circuit, as a super statute. I know, but the Constitution operates as a super statute, too, and the Watson case was a constitutional claim under 1983, which has no exhaustion. The Fifth Circuit said that the justiciability issue in Mendes is a judge-created justiciability question, and so therefore, it would not be a stress to conclude that RIFRA also must displace a judge-created abstention doctrine. Here, that's quoting from the Fifth Circuit. So, their argument was RIFRA displaces any abstention doctrine. Third, RIFRA contains no exhaustion requirement. That's been held through by the Third Circuit, the Ninth Circuit, and as the Ninth Circuit observed on page five of our brief, the Supreme Court has suggested the same. Fourth, they have exhausted their administrative remedies, and here's where we get to the BCMR does not have the authority to declare law. It has the authority to basically, you know, decide if a factual error has been made in somebody's record, but it cannot declare law. The full quote is found on page eight of our reply brief. This is from Glines versus Wade. The BCR was never intended by Congress to resolve the essentially legal issues involved in this case. Like other BCMRs, it is a clemency-oriented body with authority to correct an error or remove an injustice, not to declare the law. The suggestion that the BCMR can basically overrule the Surgeon General's decision on an RAR is absolutely incorrect, and indeed, the Air Force's own documents, which we cite in our brief, make clear that it is incorrect. It is, they may be able to look at things, whether a discharge is honorable or dishonorable, certain circumstances concerning the exit of the airman, but they cannot reverse the RAR, the Religious Accommodation Request Denial. Another topic that was addressed was deployment. I think there's been a factual misstatement by counsel opposite that all these people need to go anywhere in the world. We address this at length in our brief on page nine of the reply brief. I'm sorry, not page nine. In our reply brief, we talk about this regarding the least restrictive means. There's no Air Force base in the world in a location where the host country requires vaccinations. All of the vaccination requirements that have ever existed in the COVID period have been self-imposed by the Air Force themselves. And furthermore, as the deployment of three pilots, in our case, specifically Pilot McGee, illustrated, even in that case, the pilot can remain on base, which Pilot McGee did and was awarded the best out of 200 award for performance in that deployment. So they have been deployed and they can always remain on base. What about irreparable harm? Could you speak to that before you finish? I know your brief says, well, they can't be trained and so forth while they're in the status. But I thought, is that one of your points? Because before you sat down, you said we're only seeking the same exemption that other people get. Right. Those people can't be deployed either. Correct. And we're not arguing that we need relief to be deployable. What we are arguing with regard to irreparable harm is L. Rod V. Burns, where the court very clearly said the denial of religious liberty is sufficient irreparable harm in and of itself. That's one of the harms. And you are right. You don't, you don't. But how have you been denied liberty if you can exercise your right? Merely by being put into the position. The moment the vaccine mandate was issued and then they had a religious scruple against it, they were put into that position having to choose between continuing to obey orders and serve versus follow their religious faith. And that's what L. Rod. But wouldn't the sanction then be the harm, not the choice? Under the wording of L. Rod V. Burns, it suggests very strongly that the actual being put into that position is where the harm starts. And then the Fifth Circuit interpreted L. Rod V. Burns and said, yes, even being put in that position is when your religious beliefs are then put to the test, you are pressed in a way that may offend your religious beliefs. The other irreparable harm you just alluded to, and that is we are not claiming that they need, you know, that the monetary loss can't be repaired, but the freezing of their careers. So right now they are all prevented from traveling anywhere from training. They are prevented from participating in any training. And so they have all been frozen in rank. But wouldn't they be similarly restricted even if they had the administrative exemption? This was one of the issues before the district court. And one of the things you can do with the exemptions given to administrative and medical requesters is travel at least. And you don't necessarily need to travel on official Air Force planes. You can travel any way you want to get to the training. But allowing them to attain training is something that is possible. And I believe is allowed to the recipients of medical exemptions. So right now they are frozen in rank. And suppose we win in the case in chief a year from now. They will have been frozen in rank for a year and nine months. And at that point you can't say, well, you would have been two ranks higher. Here's your new rank. They still would have to go through the training and that time would be lost. There's no way of repairing that lost time. In addition to the L. Rod V. Burns irreparable harm of being placed in that position of choosing between your faith and your job. All right. Thank you for your argument. Thank you. Thank you to both counsel.